UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAYME GORDON,<br><br>               Plaintiff,<br><br>       v.<br><br>DREAMWORKS ANIMATION SKG, INC.,<br>DREAMWORKS ANIMATION LLC, and<br>PARAMOUNT PICTURES, CORP.,<br><br>               Defendants. | C.A. No. 1:11-cv-10255-JLT |

**EMERGENCY MOTION FOR PROTECTIVE ORDER AND SANCTIONS**

**I.     PRELIMINARY STATEMENT**

Counsel for Plaintiff, Jayme Gordon hereby seeks a protective order and sanctions pursuant to Fed. R. Civ. P. 26(c), to protect Mr. Gordon, his family, friends and neighbors from further harassment by Defendants. Specifically, Mr. Gordon seeks an Order from this Court requiring Defendants to immediately cease their harassing surveillance and/or interrogations of Mr. Gordon, his wife, son, mother, nephew, neighbors and friends. Mr. Gordon also requests the Court order the Defendants to disclose the identity of all investigators hired by them and/or their counsel; produce copies of notes, reports, and photographs from such investigators; and produce the instructions provided to these investigators by Defendants and/or their counsel.

As described in further detail below, Defendants and their counsels' wanton disregard of the rules of the Court and flagrant attempt to intimidate Mr. Gordon and his family constitutes serious litigation misconduct, a violation of Massachusetts' witness intimidation law, ALM GL ch. 268, § 13B (2011), and warrants sanctions by this Court under the Court's inherent power.

Moreover, Defendants' counsels' conduct violated the ethical rules of the State Bar of Massachusetts. This Court has inherent authority to discipline attorneys who appear before it for such ethical violations.

## II.   FACTUAL BACKGROUND

In February of this year, Mr. Gordon filed this suit against Defendants, including DreamWorks, *et. al*. Mr. Gordon's suit is a civil suit for copyright infringement, in which the issue is whether Defendants copied Mr. Gordon's Kung Fu Panda Power works, as illustrated by Mr. Gordon in his Complaint:




Gordon's Kung Fu Panda Power characters      Defendants' Kung Fu Panda characters

Pursuant to the Court's June 15, 2011 Modified Discovery Order,[1] Mr. Gordon produced relevant documents to Defendants on June 27, 2011. Included in Mr. Gordon's production were letters from Mr. Gordon's friends and family, including Mr. Gordon's mother and nephew, which discussed Mr. Gordon's creation of his Kung Fu Panda Power works.

On August 26, 2011, counsel for the parties agreed that Mr. Gordon's deposition would be taken on October 19, 2011.

---

[1] Dkt No. 24.

Seven months after the filing of Mr. Gordon's Complaint, but just a few weeks before Mr. Gordon's deposition was scheduled to be taken, investigators began overt surveillance of Mr. Gordon and his family. Defendants' investigators parked outside of Mr. Gordon's apartment building on multiple occasions and repeatedly followed Mr. Gordon in his car. This overt surveillance culminated on October 2, 2011 in a direct encounter between Mr. Gordon and one of Defendants' investigators, due to the fact that Mr. Gordon believed this investigator was going to harm his sixteen year old son who was home alone. This encounter was recorded by Mr. Gordon. These video recordings will be submitted to the Court under separate cover. Mr. Gordon was able to obtain the license plate number of the surveillance vehicle and it has been confirmed that this vehicle is owned by a private investigator.[2]

At the same time that the overt surveillance of Mr. Gordon and his family began, investigators also began overt interrogations of Mr. Gordon's neighbors. In order to do this, these investigators had to gain entry into Mr. Gordon's locked apartment building. Defendants' investigators knocked repeatedly on Mr. Gordon's neighbor's doors and then showed these neighbors, including a twelve year old minor child who was home alone, a photograph of Mr. Gordon. Upon information and belief, this photo is the same or similar to the photo of Mr. Gordon that appeared in Mr. Gordon's complaint in this case. Along with displaying the photo, the investigators asked questions about Mr. Gordon, leaving Mr. Gordon's neighbors with the impression that Mr. Gordon had done something improper. In addition, investigators also obtained entry into Mr. Gordon's mother's locked apartment building, where they knocked loudly and incessantly on his mother's neighbor's doors, and again questioned individuals about Mr. Gordon. Mr. Gordon's nephew lives with Mr. Gordon's mother, and Mr. Gordon's nephew

---

[2] Declaration of Kristen McCallion (the "McCallion Decl."), Exs. A and F.

and mother are the same individuals who wrote the letters produced to Defendants referenced above.

The harassing acts of Defendants have seriously alarmed and annoyed Mr. Gordon and his family. As a result of these acts, Mr. Gordon, his wife, his son, his mother and his nephew, have suffered and are suffering substantial emotional distress.

After obtaining confirmation that these acts were indeed being conducted by private investigators, on October 14, 2011 counsel for Mr. Gordon wrote a letter to Defendants' counsel to attempt to confer in good faith to resolve this issue.[3] In this letter, Mr. Gordon's counsel explained that Defendants' investigators were causing fear and distress to Mr. Gordon and his family, and demanded "that all such investigations and harassment stop immediately."[4] Counsel for Defendants responded to this letter on October 17, 2011.[5] Rather than address the serious issues raised in Mr. Gordon's counsel's letter of October 14, 2011, Defendants' counsel simply stated that "Mr. Gordon should hardly be surprised that he is being investigated in connection with this claim."[6]

Upon receipt of this response, or lack thereof, counsel for Mr. Gordon wrote yet another letter, detailing again the intimidation tactics of Defendants' agents, and pointing out the obvious, *i.e.,* that such "actions have no connection to the claims at issue in this case and are designed solely to harass and intimidate."[7] Counsel for Mr. Gordon then notified Defendants' that they would seek a protective order from the Court, appropriate sanctions for Defendants'

---

[3] McCallion Decl., Ex. A.
[4] *Id.*
[5] *Id.*, Ex. B.
[6] *Id.*
[7] *Id.*, Ex. C.

harassment of Mr. Gordon, and that Mr. Gordon would not sit for his deposition until this issue was resolved.[8]

Shortly thereafter, Defendants' counsel sent another letter, this time admitting that Mr. Gordon had been the subject of surveillance and that investigators had indeed had conversations with Mr. Gordon's neighbors.[9] Again, Defendants' counsel gave no assurance that their intimidating tactics would cease. Instead, counsel simply stated only that there was "no present intention to do any further surveillance or discussions with neighbors."[10] Further, having accomplished their goal of intimidating Mr. Gordon and his family, Defendants' counsel now threatened that if counsel did not confirm Mr. Gordon's appearance at his deposition by 5pm that same day, they would "ask the Court for sanctions in connection with his non-appearance, including but not limited to the dismissal of plaintiff's case…"[11] Counsel for Mr. Gordon then sent a third letter reiterating that Mr. Gordon's deposition was simply being postponed until counsel is able to obtain a protective order from the Court restraining the activities of Defendants' agents.[12] In that same letter, counsel for Mr. Gordon pointed out that between lead counsel, Ms. Brooks, and Mr. Madera, co-lead counsel, they had been practicing law "for nearly seventy years and have never encountered these tactics in an intellectual property case."[13] Counsel further pointed out that they were at a "loss to see how interviewing the children of Mr. Gordon's neighbors, or the surveillance of Mr. Gordon and his family could result in the

---

[8] *Id.*
[9] *Id.*, Ex. D.
[10] *Id.*
[11] *Id.*
[12] *Id.*, Ex. E.
[13] *Id.*

disclosure of information that would have any relevance to the issues in this case."[14] To date, there has been no response from Defendants' attorneys to this final letter.

### III. ANALYSIS

Massachusetts' witness intimidation law, ALM GL ch. 268, § 13B (2011), titled "Intimidation of Witnesses or Jurors," provides in relevant part that:

> (1) Whoever, directly or indirectly, willfully . . . (c) misleads, intimidates or harasses another person who is: . . . (iv) a person who is furthering a civil… proceeding, including. . . any. . .civil proceeding of any type; or (v) a person who is or was attending or had made known his intention to attend a civil or criminal proceeding, including. . . any. . . civil proceeding of any type with the intent to impede, obstruct, delay, harm, punish or otherwise interfere thereby, or do so with reckless disregard, with such a proceeding shall be punished by imprisonment in a jail or house of correction for not more than 2 and one-half years or by imprisonment in a state prison for not more than 10 years, or by a fine of not less than $1,000 nor more than $5,000, or by both such fine and imprisonment."

\* \* \*

> (3) As used in this section, "harass" shall mean to engage in any act directed at a specific person or persons, which act seriously alarms or annoys such person or persons and would cause a reasonable person to suffer substantial emotional distress.

ALM GL ch. 268, § 13B (2011). This statute was amended on November 4, 2010 to apply to civil cases. There is a purpose to this law and a reason why it was recently amended to apply to civil cases — it is to prevent exactly what has occurred in this case. There is no dispute that Mr. Gordon (the plaintiff), his mother, and his nephew (fact witnesses) are persons who are "furthering a civil proceeding" nor is there any dispute that Mr. Gordon had made known his "intention to attend a civil proceeding" *i.e.,* his own deposition. There is also no dispute that Defendants' agents have harassed and intimated Mr. Gordon, his mother and his nephew through all of their overt activities thereby causing them to "suffer substantial emotional distress." The

---

[14] *Id*.

fact that, as counsel for Defendants put it, Mr. Gordon "should hardly be surprised" by these tactics, is no defense. In fact, such a representation makes this behavior even more egregious.

Further, Defendants' acts of harassment and intimidation violate the Massachusetts Rules of Professional Conduct, which expressly provide that "[a] lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others." Mass. Rules of Prof. Cond., Preamble. In particular, Defendants are in violation of Rule 4.4, which provides that "[i]n representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person . . . ." Mass. R. Prof. C., Rule 4.4. When applying Rule 4.4, a court must determine whether the lawyer's conduct served some legitimate purpose other than those that are prohibited. *In the Matter of the Discipline of an Attorney*, 442 Mass. 660, 668, 670 (2004). There is no reason why overt surveillance of Mr. Gordon, his wife, son, mother, and nephew, and harassment of their neighbors, would or could serve a legitimate purpose. As has already been pointed out to DreamWorks' counsel, and to which there has been no response, such actions could not possibly uncover evidence in any way related to Mr. Gordon's claims of copying by Defendants.

Moreover, Rule 8.4(d) of the Massachusetts Rules of Professional Conduct provides that "[i]t is professional misconduct for a lawyer to: . . . (d) engage in conduct that is prejudicial to the administration of justice." At best, Defendants' activities are in violation of Massachusetts Rules of Professional Conduct 4.4 and 8.4(d) and at worst they are felonious.

Under its inherent powers, a court has wide discretion to "fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *see also Ty, Inc. v. Softbelly's Inc.*, 353 F.3d 528, 536-537 (7th Cir. 2003). These implicit powers include the judicial authority to sanction counsel for litigation abuses which

threaten to impugn the District Court's judicial integrity or disrupt its efficient management of the proceedings. *United States v. Kouri-Perez*, 187 F.3d 1, 7 (1st Cir. 1999); see also *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765 (1980) (noting that "this Court recognized the 'well-acknowledged' inherent power of a court to levy sanctions in response to abusive litigation practices").

## IV.   CONCLUSION

Defendants are in violation of this state's witness intimidation law, ALM GL ch. 268, § 13B (2011), and in violation of Massachusetts Rules of Professional Conduct 4.4 and 8.4(d). For the foregoing reasons, Mr. Gordon respectfully seeks an Order from the Court pursuant to Rule 26 which provides that the Court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26. Accordingly, Mr. Gordon respectfully requests the Court issue an Order and sanctions as outlined below, which are necessary and appropriate to compensate Mr. Gordon for the harm caused by Defendants and their counsels' misconduct, to preserve the integrity of the Court and the judicial process, and to deter conduct such as that displayed by Defendants and their counsel:

(1)   An Order from this Court requiring Defendants and their counsel to immediately cease from their surveillance and harassment of Mr. Gordon, his family, his friends and his neighbors; enjoining Defendants and their counsel from further communicating with investigators to investigate and/or conduct surveillance on Mr. Gordon, his family, his friends and his neighbors; and enjoining Defendants and their counsel from any further direct or indirect contact with Mr. Gordon, his family, relatives, friends, and neighbors;

(2) An Order from this Court requiring Defendants to disclose the identity of all investigators retained by Defendants and/or their counsel to investigate and/or conduct surveillance on Mr. Gordon, his family, his friends and neighbors;

(3) An Order from this Court requiring Defendants to produce to Mr. Gordon's counsel copies of all notes, reports, and photographs from all investigators retained by Defendants and/or their counsel to investigate and/or conduct surveillance on Mr. Gordon, his family, his friends and his neighbors;

(4) An Order from this Court requiring Defendants to produce the instructions provided by Defendants and/or their counsel to every individual retained to investigate and/or conduct surveillance on Mr. Gordon, his family, his friends and neighbors;

(5) An Order from this Court revoking the *pro hac vice* admission of Mr. Jonathon Zavin of Loeb & Loeb,[15] the author of the letters annexed to the McCallion Decl. as Exhibits B and D, due to his violations of ALM GL ch. 268, § 13B (2011), and Massachusetts Rules of Professional Conduct 4.4 and 8.4(d);

(6) An Order from this Court permitting Mr. Gordon's counsel to offer evidence at trial of the improper conduct of Defendants' attorneys; and

(7) An Order from this Court directing Defendants to reimburse Mr. Gordon for the reasonable costs and attorneys' fees he has incurred in prosecuting this motion.

Mr. Gordon also requests that to deter future violations of the Massachusetts Rules of Professional Conduct the Court also issue an appropriate public version of any final rulings related to this motion.

---

[15] Dkt. No. 20.

| | |
|---|---|
| Dated:  October 18, 2011 | /s/ Gregory A. Madera<br>Gregory A. Madera, BBO #313,020<br>FISH & RICHARDSON P.C.<br>One Marina Park Drive<br>Boston, MA 02210-1878<br>(617) 542-5070; madera@fr.com<br><br>Juanita R. Brooks, *pro hac vice*<br>FISH & RICHARDSON P.C.<br>12390 El Camino Real<br>San Diego, CA 92130<br>(858) 678-5070; brooks@fr.com<br><br>Kristen McCallion, *pro hac vice*<br>FISH & RICHARDSON P.C.<br>601 Lexington Avenue, 52nd Floor<br>New York, NY 10022<br>(212) 765-5070<br>mccallion@fr.com<br><br>ATTORNEYS FOR PLAINTIFF<br>JAYME GORDON |

**CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 18th day of October, 2011.

/s/ Aileen Kelley
Aileen Kelley

22723517.doc