UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAYME GORDON,<br><br>        Plaintiff,<br><br>v.<br><br>DREAMWORKS ANIMATION SKG, INC., DREAMWORKS ANIMATION LLC, and PARAMOUNT PICTURES CORP.,<br><br>        Defendants. | Civil Action No. 1:11-cv-10255-JLT |

## DEFENDANTS' MEMORANDUM IN OPPOSITION
## TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

David Grossman
LOEB & LOEB LLP
10100 Santa Monica Blvd.
Suite 2200
Los Angeles, California 90067
(310) 282-2000

Jonathan Zavin
LOEB & LOEB LLP
345 Park Avenue
New York, NY 10154
(212) 407-4161

John A. Shope
Julia Huston
David A. Kluft
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, Massachusetts 02210
(617) 832-1000

**Table of Contents**

Introduction ........................................................................................................................ 1

Background ........................................................................................................................ 5

    A.    Plaintiff's Complaint Alleges That He Sent A Package Of His Work To DreamWorks, But No Such Package Exists. ............................................................ 6

    B.    Plaintiff Admits Destroying The Computer(s) On Which He Created The Allegedly Infringed Work After Deciding To Pursue A Claim. .............................. 7

    C.    Plaintiff Registered the Material He Claims Was Infringed Only After He Was Aware Of The *Kung Fu Panda* Film. ............................................................. 8

    D.    Plaintiff Doctored A Photograph In His Complaint (And In This Motion) To Bolster His Claim. .................................................................................................... 8

        **1.**    **Plaintiff's Image Was Never Disclosed to Defendants.** ........................... 9

        **2.**    **Plaintiff Has Deceptively Altered The Image Of *Kung Fu Panda* That Was Included In The Complaint And This Motion.** ...................... 9

    E.    The Claim Could Not Have Any Merit Because There Exists Overwhelming Evidence Of Independent Creation By DreamWorks. ............................................ 10

    F.    Based On The Dubious Nature Of Gordon's Claims And His Admitted Misdating Of His Own Material And Destruction Of Critical Evidence, The Defendants Investigated Gordon. ............................................................................ 11

Argument ......................................................................................................................... 12

    A.    Plaintiff's Motion Is Not Supported By Any Evidence. ......................................... 12

    B.    No Violation Of The Criminal Witness Intimidation Statute Occurred. ................ 13

    C.    No Violation Of Massachusetts Rules Of Professional Conduct Occurred. ........... 14

    D.    The Relief Requested Is Inappropriate And Unprecedented. ................................. 16

Conclusion ....................................................................................................................... 17

**Introduction**

Plaintiff's Emergency Motion for Protective Order and Sanctions is legally flawed and premised on unfounded and demonstrably false allegations, and should be denied. Although this motion should be rejected due to the fact that ***Plaintiff has failed to establish the existence of even a single improper act by anyone, or even to present an affidavit or other evidence of such an act***, due to the serious nature of the accusations made against Defendants and their counsel, they submit herewith the affidavits of John A. Shope and David Grossman, and this memorandum, to assure the Court that the deficiencies of Plaintiff's papers run far deeper than their lack of any evidence. Plaintiff falsely accuses Defendants' counsel of ethical and even criminal misconduct and demands that sanctions be imposed, that protected work product be disclosed, that counsel be prohibited from further investigating Plaintiff, that the jury be presented with irrelevant and inadmissible evidence, and that one of Defendants' attorneys have his admission *pro hac vice* revoked. None of these requests are warranted and there is absolutely no basis for any of the requested relief. Simply put, there has been no "harassment" or "intimidation" of Plaintiff or his family, no "interrogations" of anyone, no violations of any statute or rule, no unlawful acts or omissions, and no litigation abuse or other improper conduct or intent by Defendants or their counsel.[1] The true purpose of the motion appears to be to divert attention from the fact that plaintiff Jayme Gordon now admits to having misstated the critical dates on which he created the works that he alleges have been illegally copied, appears to have fabricated those drawings after the DreamWorks film was created and publicized, and admittedly

---

[1] As discussed in Defendants' Motion to Dismiss (Dkt. No. #36-38), Plaintiff had no good faith basis for his intentional refusal to appear at his long-scheduled deposition. Apart from its lack of any factual or legal basis, the request for a protective order relates to issues that have no bearing on Plaintiff's ability to testify under oath. Plaintiff's motion appears to be nothing more than a pretextual gambit designed to prejudice the Court against Defendants before the Court was informed of Plaintiff's misconduct in this litigation and to further delay his deposition in hopes of obtaining the Defendants' work product that could assist Plaintiff's counsel in preparing for

discarded the computer and destroyed the electronic files that, upon forensic examination, would permit the Defendants to prove such a fabrication.

As set forth in Defendants' Motion to Dismiss, Defendants had – and continue to have – every reason to believe this lawsuit is a complete scam. Plaintiff filed his Complaint without warning almost three years after *Kung Fu Panda* was first released. Further, the Complaint is inherently dubious due to its bizarre and speculative theories of how DreamWorks might have had access to anything created by plaintiff Jayme Gordon, its material allegations made solely on information and belief, and the suspicious timing of the copyright registrations of Plaintiff's unpublished works, many years after they were supposedly created but admittedly after Gordon learned of the forthcoming DreamWorks film. Finally, there is an enormous body of evidence, gathered in DreamWorks' successful defense of a suit by another claimant who also falsely alleged that he, and not DreamWorks, had conceived the characters and stories in *Kung Fu Panda*, all establishing that the film was independently created by scores of DreamWorks personnel over a period of many years. Plaintiff's case is completely meritless and Plaintiff cannot prevail. Over the past four months, however, Defendants have uncovered several aspects of this case that make it not merely meritless, but brought in bad faith.

To establish access, Gordon alleges that he sent his works to Disney (which, he speculates, were then secretly taken to DreamWorks and not used for almost eight years) and DreamWorks (in an attempted unsolicited submission which his documents show was rejected) and that he briefly put some of them on his websites. Amended Complaint ¶¶ 48-62. Thus, there were several fairly obvious questions that should have been answered upon receipt of Plaintiff's required document production: What did Plaintiff actually send to Disney? What was in the unsolicited material that Plaintiff allegedly sent to DreamWorks in 1999? When did the Plaintiff

---

their client's deposition.

actually create the electronic files that made up much of his copyright registrations in 2008 and 2011 (after he was admittedly aware of *Kung Fu Panda* and its characters and stories)? How much of his purported "Kung Fu Panda Power Work" was actually available on his websites? However, only the last question was answered by Plaintiff's documents – and the answer to that question was that despite the allegations in the Complaint, there was nothing about "Kung Fu Panda Power" on his websites.[2]

In fact, Plaintiff had no documentary evidence as to what, if anything, he sent to Disney or DreamWorks and he did not produce any of the electronic files associated with his 2008 and 2011 copyright registrations. Furthermore, his attorneys admitted in a supplemental filing with the Copyright Office that some of Gordon's allegedly infringed work was not completed in 1999, as he had originally represented, but not until 2008 − after the DreamWorks film had been created and publicized. Unsurprisingly, Defendants requested a forensic examination of the computer that Gordon had admittedly used in creating the material in part to determine whether Gordon had fabricated his drawings after learning of the DreamWorks film. After a series of inconsistent and implausible assertions,[3] Plaintiff's counsel eventually admitted that **_Plaintiff destroyed all of the electronic evidence_** that relates to his allegedly infringed works entitled either "Kung Fu

---

[2] Because Plaintiff registered the hard and electronic copies of the materials he put online in 1999/2000, Plaintiff produced the Copyright Office's deposit copy of his websites as they existed at that time to Defendants. There is *nothing* in this collection of works that could possibly be the basis of any claim of infringement in this case. While there were drawings of Pandas on the website, they were very different than the works that Plaintiff claims were infringed in this case.

[3] The contradictory representations made by counsel regarding Plaintiff and his records and computers strongly suggest that Plaintiff has not been forthcoming with his own counsel. On numerous occasions Plaintiff's counsel has firmly asserted that Plaintiff has produced all of his files, yet additional highly relevant documents have been subsequently produced without explanation, including as recently as October 19, 2011 (i.e., after this motion was filed). This belated production of critical (but damaging) documents is yet more evidence that the present motion is pretextual, and was filed only to further delay Plaintiff's deposition.

Panda Power" or "Five Fists of Fury" and that he discarded his computer and all of his computer files **_after_** he created electronic documents and images that are the heart of his lawsuit, **_after_** he was aware of *Kung Fu Panda*, and **_after_** he registered his own supposedly infringed works with the Copyright Office in 2008 and 2011. Put simply, Plaintiff registered his works in anticipation of filing this lawsuit and then destroyed this highly material evidence before Defendants could evaluate it.

Because he has destroyed this evidence, Gordon himself is now the sole source of evidentiary support for the *prima facie* element of what, if anything, he purportedly sent to Disney or DreamWorks. Given the dubious nature of Plaintiff's claim on its face and in light of the overwhelming evidence of independent creation of *Kung Fu Panda*, his destruction of highly material evidence and the incomprehensible explanations that his counsel has provided for his actions, Defendants had legitimate questions regarding whether Gordon's claims were not merely meritless but also fraudulent.

Based on these serious concerns, and as set forth in the accompanying Affidavit of John A. Shope, Defendants' counsel conducted a background investigation of Plaintiff. This investigation had no improper purpose and was intended solely to determine whether the Plaintiff had a history of fraud, and to attempt to verify the truth (or lack thereof) of various allegations in the Complaint. Plaintiff was the sole focus of the investigation and the individuals that were interviewed did so voluntarily and did not include any of Plaintiff's family members. Among other things, Defendants discovered that Plaintiff has a criminal conviction, has had a restraining order entered against him, and has asserted multiple civil claims for injury to his person or property in which fraud has been suggested. The investigation also sought to determine, among other things, whether Plaintiff was actually a professional artist (as he alleged in his Complaint) despite the absence of any known licenses to others of his work, and whether

4

Plaintiff had been or was involved in other scams. The investigation was lawful and appropriate, and Plaintiff has not submitted any evidence to the contrary.

Aside from being factually and legally without merit, the primary relief sought – a cessation of the observation of Plaintiff – is completely moot because, as Plaintiff's counsel was specifically informed before the present motion was filed, the observation of Plaintiff concluded weeks before the date scheduled for his deposition.

**Background**

The Complaint in this matter was filed and served on or about February 16, 2011. The initial scheduling conference was held on August 17, 2011. Pursuant to the Court's rules, both Plaintiff and Defendants produced relevant documents before that date. Following those initial document productions, each side has produced further documents at the request of the other side, where the requesting party thought that some relevant documents may have been omitted from the initial production. Grossman Aff., ¶ 3. On August 18, Defendants noticed Plaintiff's deposition for September 22, more than one month in advance. *Id.*, ¶ 5. Despite the fact that Plaintiff is represented by eight attorneys, Plaintiff's counsel informed Defendants that they had conflicts until October 19. *Id*. On this basis, the deposition was rescheduled for that date.

Based initially on the complete improbability of the allegations in the Complaint, and subsequently on (1) the failure of Plaintiff to produce documents that it appeared from his Complaint would have to exist, (2) the conflicting representations made by Plaintiff's counsel regarding the existence of computers alleged to have been used in creating the allegedly infringed works, (3) the suspicious timing of Plaintiff's copyright registrations many years after they were supposedly created, (4) the Plaintiff's admission to the Copyright Office that he had misstated the date on which he had completed the works on which he based his claim as 1999 when it was actually 2008; and (5) the apparent doctoring, as discussed below, of an image by

5

Plaintiff in his Complaint (and in the present motion), this lawsuit had and has all of the indicia of a scam. Defendants accordingly decided that a standard background investigation of the Plaintiff was warranted. The details of each of these obvious problems with Plaintiff's pursuing of this claim are as follows:

    **A.**    **Plaintiff's Complaint Alleges That He Sent A Package Of His Work To DreamWorks, But No Such Package Exists.**

In an attempt to satisfy the element of access, Plaintiff claims that in 1999 he submitted an unsolicited package to DreamWorks that contained "a number of his illustrated works, including [his] Kung Fu Panda Power Work," which allegedly included the "drawings, illustrations, characters, character attributes, literary text, and artistic expression embodied within" his purported work entitled Kung Fu Panda Power. Amended Complaint, ¶¶ 5, 60. Plaintiff, however, did not produce any letter to DreamWorks, nor did he produce any copies of what purported to be enclosed with his submission. Grossman Aff., ¶ 6. He did, however, produce a copy of a responsive letter sent to him by DreamWorks, and that letter clearly informed Gordon that ***DreamWorks does not accept unsolicited materials*** and was ***declining his "request to submit"*** something to DreamWorks. Grossman Aff., Ex. A. The letter itself seems to indicate that no material was actually sent to DreamWorks, only that Plaintiff had requested the opportunity to submit an undescribed project: "Although we appreciate your interest, our company policy strictly prohibits our consideration of any unsolicited material. We generate our projects internally, and therefore we must decline your request to submit your proposed project." Id. Plaintiff's own records irrefutably establish that he has no documentation to support his claim that he sent his Kung Fu Panda Power Work to DreamWorks, and that DreamWorks was unwilling to accept whatever it was that he wanted to submit.

### B. Plaintiff Admits Destroying The Computer(s) On Which He Created The Allegedly Infringed Work After Deciding To Pursue A Claim.

After reviewing Plaintiff's initial document production, the Defendants realized that there were numerous inconsistencies in the drawings that suggested that some or all of them had not been created on the dates Gordon ascribed to them. (As noted, Gordon had admitted misdating some of his materials.) Accordingly, before the initial scheduling conference, Defendants requested a forensic examination of Gordon's computer. Grossman Aff., Ex. B. Defendants believed that an examination of the electronic files that Gordon purportedly created would be crucial to determining when the unpublished purported "Kung Fu Panda Power" work was actually created. That such electronic files *should* have existed is clear: Plaintiff's artwork would necessarily have been included in computer files that he allegedly placed on his website between 1999 and 2001, the Amended Complaint (¶ 68) specifically alleged that he created other electronic art using Microsoft Photoshop, and the vast majority of the documents that he registered in 2008 and 2011 were digitally created (including those with purported creation dates as early as 1992). Plaintiff's counsel did not respond and say "no such computer exists" – instead Plaintiff's counsel agreed to the requested forensic examination. *Id.*, Ex. C.

However, Plaintiff's counsel subsequently stated that ***Plaintiff did not have a computer***. Defendants' counsel contacted Plaintiff's counsel and pointed out the dubious nature of that assertion. Grossman Aff., ¶ 11. It was only after being confronted with the facts that Plaintiff operated multiple websites, maintained multiple email addresses, and created digital art files that Plaintiff's counsel acknowledged that, contrary to the prior unequivocal statement, ***Plaintiff actually has two computers***. *Id.*, ¶ 12.

At that point, however, Plaintiff's counsel asserted that Gordon's computers had been acquired only recently and contained no relevant information, and that all relevant electronic files had been destroyed by Gordon, presumably after his 2008 and/or 2011 copyright

7

registrations, when he was already planning on making a claim against Defendants. Grossman Aff., ¶ 12. Given Defendants' concerns, they reiterated their request that Plaintiff produce his computer(s) for forensic imaging – and as Plaintiff's counsel had previously agreed to allow. Grossman Aff, Ex. D. Plaintiff's counsel has nevertheless refused to provide these computers for examination.

### C. Plaintiff Registered the Material He Claims Was Infringed Only <u>After</u> He Was Aware Of The *Kung Fu Panda* Film.

The material that Plaintiff claims that the Defendants copied in their film was registered for copyright by Plaintiff in 2008 and in 2011, well after the DreamWorks film had been created. Although *Kung Fu Panda* was not widely released until June of 2008, it was first announced in 2002 and massive advance publicity began in late 2007. This included the widespread dissemination of trailers containing images of all of the main characters and much of the basic storyline. Plaintiffs' counsel has conceded that Gordon, at the very least, "viewed a trailer of the '*Kung Fu Panda*' film before filing his 2008 copyright registration." Shope Aff. Ex. B (letter from K. McCallion dated August 30, 2011). Thus Plaintiff's "evidence" of the existence of much of what he claims was copied by Defendants dates from a time *after* he was aware of Defendants' film – and of course, the Plaintiff has conveniently destroyed the electronic files that might have shown when this material evidence was really created.

### D. Plaintiff Doctored A Photograph In His Complaint (And In This Motion) To Bolster His Claim.

The Complaint, Amended Complaint and this Motion all highlight a purported comparison of Plaintiff's work and *Kung Fu Panda* in the images set forth below. Plaintiff is fully aware that any implication that one work was copied from the other is false and is contradicted by incontrovertible evidence. Nevertheless, this intentionally misleading comparison has been repeatedly submitted in Plaintiff's pleadings.

8



### 1. Plaintiff's Image Was Never Disclosed to Defendants.

The image on the left is Plaintiff's unpublished work that Plaintiff knows was never disclosed to Defendants or the general public. As noted, Plaintiff asserts that Defendants had access to this work under three theories: (1) his alleged submission to Disney, which he speculates might have found its way to DreamWorks, Cmplt. ¶¶ 48-58; (2) an unsolicited submission that he allegedly made to DreamWorks in 1999; and (3) his websites in 1999/2000. However, even taking Plaintiff's claim as to when this document was created as true, Plaintiff's documents and representations of his counsel only establish that: (1) this unpublished image was ***created a year after*** his 1992 submission to Disney; (2) DreamWorks rejected Plaintiffs' request to submit materials; and (3) this unpublished image was never on Plaintiff's websites. As a result, Plaintiff's unpublished image was never disclosed to Defendants and could not have been copied by anyone associated with *Kung Fu Panda*.

### 2. Plaintiff Has Deceptively Altered The Image Of *Kung Fu Panda* That Was Included In The Complaint And This Motion.

Having reviewed the publicly available materials associated with the film and upon closer inspection of the image in the Complaint, it is clear that the purported image that Plaintiff claims is "strikingly similar" to his own unpublished sketch was deliberately doctored by Plaintiff. The original image that DreamWorks used for marketing purposes, well after the characters had been created, is below.

9

By intentionally manipulating this image to delete dissimilar elements in the DreamWorks material, Plaintiff attempted to create a perceived similarity between a rudimentary sketch – <u>which was never published anywhere</u> – and two of Defendants' *Kung Fu Panda* characters.[4]



### E. The Claim Could Not Have Any Merit Because There Exists Overwhelming Evidence Of Independent Creation By DreamWorks.

Coincidentally, Defendants were sued in 2010 in Los Angeles by a different plaintiff, one Terence Dunn, who also claimed that the main ideas and characters in the film *Kung Fu Panda* were stolen from *him*. In the course of that litigation (which ended with a jury verdict in favor of Defendants in July 2011), DreamWorks examined and produced scores of thousands of documents regarding the creation of the film, and obtained depositions and sworn testimony from the many creators of the film. Grossman Aff., ¶¶ 2-4. All of that evidence showed that the film had been independently created by DreamWorks and by independent writers and artists

---

[4] The claim that the two characters displayed above were copied by DreamWorks is also false because, as Plaintiff has seen in incontrovertible documents that were produced by DreamWorks months ago, the two *Kung Fu Panda* characters were independently created by different DreamWorks writers in different years.

10

hired by DreamWorks. There was no evidence whatever of any awareness much less use of any work by Gordon. *Id.* ¶ 2. Because the elements in the film that Gordon claims were copied from him were created by numerous different people over the course of three or four years, Gordon's theories of access and copying would implausibly require a massive conspiracy by numerous DreamWorks employees as well as third parties to steal his material incrementally over several years.

> **F.  Based On The Dubious Nature Of Gordon's Claims And His Admitted Misdating Of His Own Material And Destruction Of Critical Evidence, The Defendants Investigated Gordon.**

Based on the dubious nature of this lawsuit on its face, the clear and irrefutable evidence of the independent creation of *Kung Fu Panda*, Gordon's admitted misdating of drawings on which he bases his case, inconsistencies in those drawings suggesting fabrication, the inconsistent and implausible representations of his counsel, and his admitted destruction of material evidence after deciding to pursue a claim, Defendants conducted a background investigation of Plaintiff. The investigation was proper and lawful in every respect and there is no evidence to the contrary. Shope Aff., ¶¶ 14-15. There were no communications with Plaintiff or his family. *Id.*, ¶ 16. The background check and investigation was supervised by Defendants' Boston counsel, and involved the engagement of a reputable professional firm both run by a former FBI agent and licensed as a private detective company. *Id.*, ¶¶3-4. The investigation revealed, among other things, that Gordon had been criminally convicted of assault, that he had been subject to a restraining order, and that he had filed previous civil suits asserting claims of damage to his person and property that were suspected of being fraudulent or inflated. *Id*. ¶ 12. Although Plaintiff's counsel was advised that the observation to which they now object had concluded weeks earlier, the present motion nonetheless followed at 7:03 p.m. on October 18, 2011, the day before Gordon was scheduled to be deposed.

11

**Argument**

**A. Plaintiff's Motion Is Not Supported By Any Evidence.**

As the moving party, Plaintiff bears the burden of showing good cause for a protective order. *Multi-Core, Inc. v. Southern Water Treatment Co.,* 139 F.R.D. 262, 263 (D. Mass. 1991) (Bowler, M.J.) (denying motion for protective order), *citing, Public Citizens v. Liggett Group, Inc.,* 858 F. 2d 775, 789 (1st Cir. 1988). Plaintiff is required to prove that the "true purpose" of Defendants' conduct was to "annoy, embarrass, or oppress, or that there is no prospect that it will lead to the discovery of relevant evidence." *McCarron v. J.P. Morgan Sec., Inc.,* 2008 U.S. Dist. LEXIS 40059 at *7 (D. Mass. 2008) (Stearns, J.) (denying motion for protective order).

"Naked assertions" by attorneys are not sufficient to meet this burden. *Dalmady v. Price Waterhouse & Co.,* 62 F.R.D. 157, 159 (D. P.R. 1973) (refusing to decide motion for protective order to postpone deposition where motion was not accompanied by an affidavit). Rather, "well prepared and complete affidavits . . . are necessary to corroborate and give substance to his attorneys' assertions." *Id.* For example, in *Littman v. Walgreen Eastern Co., Inc.,* 1998 U.S. Dist. LEXIS 18422 at *6 (D. Mass. 1998) (Neiman, M.J.), where plaintiff moved for a protective order to cancel her deposition, the Court denied the motion because it was not accompanied by a sworn affidavit detailing the facts supposedly giving rise to the need for the order. Here the only affidavit, that of Ms. McCallion, does not swear to facts, but merely attaches correspondence between counsel (and a brief video purportedly filmed by Gordon, which simply shows Gordon chasing someone).

Plaintiff's counsel's arguments and implications regarding "harassment" and "intimidation" are not evidence. The extremely brief and likely highly edited video shows what purports to be the Plaintiff in pursuit of an investigator, not the reverse as might be supposed in the motion. Considering the drastic and unprecedented relief sought, some evidence would have

12

been expected, but none was provided.  That failure speaks volumes about the true intention of the present motion, which appears to have been simply a maneuver to delay Plaintiff's deposition, to prejudice Defendants' counsel with this Court, and to obtain protected work product in the hope that Mr. Gordon can evade being caught in further lies at his deposition.

### B.  No Violation Of The Criminal Witness Intimidation Statute Occurred.

Plaintiff has accused Defendants' attorneys of committing a felony, namely intimidating a witness in violation of Mass. Gen. Laws c. 268, § 13(B).  The lack of evidentiary support for this accusation has been compounded by Plaintiff's complete inattention to the relevant case law, and consequent failure even to allege the elements of such a charge.  Those are that (1) the person in question was to be a witness; (2) the defendant willfully (or perhaps with reckless disregard under a 2010 amendment) attempted to influence the witness; (3) the defendant's actions took the form of intimidation, force, or threats of force; (4) the defendant did so with the specific intent of influencing the individual as a witness.  *See Commonwealth v. Rivera*, 76 Mass. App. Ct. 530, 532-533 (2011); *Commonwealth v. Drumgoole*, 49 Mass. App. Ct. 87, 90, *rev. denied*, 432 Mass. 1101 (2000).  It is not sufficient merely for a defendant to have engaged in acts that may be "inferentially hostile" from the witness' point of view.  *Commonwealth v. Drumgoole*, 49 Mass. App. Ct. at 90 (a physical "bump" in a restaurant, unaccompanied by words, was insufficient).  Rather, the statute requires proof beyond a reasonable doubt that "the defendant willfully engaged in intimidating conduct, that is, acts or words that would instill fear in a reasonable person, and did so with the intent to impede or influence a potential witness's testimony."  *Rivera,* 76 Mass. App. Ct. at 534-535.

Gordon has submitted no such evidence.  Nor has he even alleged that there was an attempt to alter his testimony, or intimidate him to refrain from testifying.  A Massachusetts statute specifically authorizes the use of licensed private investigators to investigate personal

13

character, employment, and associations as well as to gather evidence in civil cases. Mass. Gen. Laws c. 147, §§ 22 *et seq.* A private investigation conducted in compliance with relevant Massachusetts statutes and case law cannot as a matter of law "instill fear in a reasonable person." *See Commonwealth v. Rivera*, 76 Mass. App. Ct. at 532-533; *Drumgoole*, 49 Mass. App. Ct. at 90; *c.f. Joyce v. SCA*, 1984 U.S. Dist. Lexis 21555 (D. Mass. 1984) (Mazzone, J.) (noting actions of investigator who conducted surveillance and spoke to neighbors and relatives would not be highly offensive to a reasonable person); *Forster v. Manchester*, 410 Pa. 192, 197-98 (1963) (tailing of plaintiff, even after she detected surveillance and attempted evasive maneuvers, not unreasonable in light of Pennsylvania analog to Massachusetts private investigator statute) (cited with approval in *Joyce*); *DiGirolamo v. D.P. Anderson & Associates, Inc.*, 10 Mass. L. Rep. 137, 1999 Mass. Super. LEXIS 190 at *6 (Mass. Super. 1999) (Gants, J.) (surveillance of plaintiff "perfectly appropriate") (citing *Forster*); *Figured v. Paralegal Technical Services, Inc.*, 231 N.J. Super. 251, 255-256, *appeal dismissed,* 121 N.J. 666 (1989) (conducting surveillance of litigant from parked car in front of house, staring at plaintiff as she drove by, and following her in public places was reasonable); *see also United States v. Medina,* 41 F. Supp. 2d 38, 46 (D. Mass. 1999) (Gertner, J.) (rejecting as "absurd" a party's interpretation of a statute that would make criminal "the hiring by the defense of an investigator primarily to gather documents or do surveillance").

### C.  No Violation Of Massachusetts Rules Of Professional Conduct Occurred.

Plaintiff also asserts that the hiring of a private investigation firm by Defendants' attorneys violated Mass. R. Prof. C. 4.4, 426 Mass. 1405 (1998) (providing that an attorney "shall not use means that have no substantial purpose other than to embarrass, delay or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person"),

14

and Mass. R. Prof. Conduct 8.4(d), 425 Mass. 1429 (1998) (prohibiting "conduct that is prejudicial to the administration of justice").

That position has been rejected. *In the Matter of Discipline of an Attorney,* 442 Mass. 660 (2004). To the contrary, such activity may be required by an attorney's duty to zealously represent his or her client, *id.,* a point that Plaintiff's counsel recognize by their own frequent use of private investigators in intellectual property cases for similar purposes.[5] Defendants have not located a single authority where conduct remotely related to that alleged by Gordon has given rise to sanctions for professional misconduct.

In accordance with their professional obligations, Defendants' attorneys, based on the bizzare claims in the Complaint, and subsequently upon learning, among other things, that Plaintiff may have fraudulently fabricated the creative work on which he bases his claims, and with the knowledge that Plaintiff had admittedly destroyed (or was concealing) computer evidence that might disclose as much, authorized an investigation to be performed by a licensed professional investigation firm. *See* Shope Aff. ¶¶ 5-11; Mass. R. Prof. C. 1.3, 426 Mass. 1313 (1998) (a "lawyer should represent a client zealously within the bounds of the law"); Mass. R. Prof. C. 1.1, 426 Mass. 1308 (1998) ("Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation"). In such

---

[5] In all of the following cases, Plaintiff's counsel used private investigators: *Coach, Inc. v. Angela's Boutique*, 2011 U.S. Dist. LEXIS 65876 (S.D. Tex 2011) (investigator used pretext to detect sale of allegedly counterfeit handbags in trademark infringement suit; *Bose Corp. v. Neher,* 2010 U.S. Dist. LEXIS 143644, (D. Mass. 2010) (private investigator used to identify sellers of headphones allegedly infringing plaintiff's trademarks); *Power-One, Inc. v. Artesyn Techs., Inc.*, 2007 U.S. Dist. LEXIS 75685 (E.D. Tex. 2007) (private investigator used in patent infringement case to track down former employees of alleged infringer); *Dimension One Spas, Inc. v. Coverplay, Inc.*, 2006 U.S. Dist. LEXIS 90838 (S.D. Cal. 2006) (use of private investigator to locate inventors of preceding patent in infringement case); *see also Wu v. Liberty Life Assur. Co.,* 2006 U.S. Dist. LEXIS 35305 (W.D. Mich. 2006) (disability benefits); *Rister v. Northwestern Mut. Life Ins. Co.*, 2004 U.S. Dist. LEXIS 6697 (E.D. Pa. 2004) (same).

Case 1:11-cv-10255-JLT   Document 39   Filed 11/01/11   Page 18 of 20

circumstances, the proper exercise of an attorney's professional responsibilities does not prohibit, but may in fact require, the engagement of a private investigator.

### D.  The Relief Requested Is Inappropriate And Unprecedented.

In addition to a protective order under by Fed. R. Civ. P. 26(c), Plaintiff seeks an order to compel production of protected work product,[6] a restraining order on counsel, the revocation of one attorney's admission *pro hac vice*, attorneys' fees, the right to introduce Defendants' alleged misconduct at trial, and some sort of "public version" of the order (whatever that might mean). Even if Plaintiff's assertions were true (they are not), he has not offered any authority for such relief.

Plaintiff cites four cases for the proposition that the Court may order the relief he is requesting. While Defendants do not doubt the broad discretion of the Court to fashion appropriate remedies for ethical violations, these cases offer no support for the relief requested here. Three of these cases do not remotely resemble the present circumstances.[7] On the other hand, in *United States v. Kouri-Perez,* 187 F. 3d 1, 4-5 (1st Cir. 1999), the First Circuit dismissed as premature an appeal where the district court had sanctioned an attorney for making unfounded claims that his opponent had threatened a witness, and for broadcasting these unfounded allegations to the media. This last case suggests that it is not the conduct of Defendants that should be examined, but that of Plaintiff's counsel.

---

[6] *United States v. Nobles*, 422 U.S. 238-39 (1975); *Clark v. Edison*, 2010 U.S. Dist. LEXIS at *4 (D. Mass. 2010) (Hillman, M.J.)

[7] *See Chambers v. NASCO, Inc.,* 501 U.S. 32 (1991) (upholding sanctions for frivolous filings under Fed. R. Civ. P. 11); *Roadway Express v. Piper,* 447 U.S. 752 (1980) (interpreting fee-shifting statute pertinent to civil rights litigation); *Ty, Inc. v. Softbelly's Inc.*, 353 F. 3d 528, 536-537 (7th Cir. 2003) (reversing sanctions for failure to include documents on exhibit list).

16

**Conclusion**

Defendants request that all of the relief requested in the motion be denied, and that Mr. Gordon's deposition be rescheduled immediately, at Defendants' convenience. Given Plaintiff's failure to support his motion with evidence or connect the supposedly improper investigation to his refusal to appear for deposition, Defendants further request that the Court exercise its discretion to award Defendants their costs and fees incurred in this motion pursuant to Fed. R. Civ. P. 26(c)(3) and 37(a)(5).

Dated: November 1, 2011

Respectfully submitted,

DREAMWORKS ANIMATION SKG, INC., DREAMWORKS ANIMATION, LLC, and PARAMOUNT PICTURES CORP.,

By their attorneys,

*/s/ John A. Shope*
John A. Shope (BBO #562056)
Julia Huston (BBO #562160)
David A. Kluft (BBO# 658970)
FOLEY HOAG LLP
Seaport West, 155 Seaport Boulevard
Boston, Massachusetts 02210-2600
Telephone: 617.832.1000
Facsimile: 617.832.7000
jhuston@foleyhoag.com
jshope@foleyhoag.com
dkluft@foleyhoag.com

Jonathan Zavin
LOEB & LOEB LLP
345 Park Avenue
New York, New York 10154
Telephone: 212.407.4161
Facsimile: 212.658.9105
jzavin@loeb.com

David Grossman
LOEB & LOEB LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, California 90067
Telephone: 310.282.2000
Facsimile: 310.282.2200
dgrossman@loeb.com

Certificate Of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on the above date.

/s/ David A. Kluft

B3941688.v1